**ORDERED in the Southern District of Florida on November 5, 2026.**

Peter D. Russin, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re: Case No. 26-24738-PDR

Rushil Singh, Chapter 15

Debtor in a Foreign Proceeding.
_______________________________________/

**ORDER GRANTING PROVISIONAL RELIEF**
**UNDER 11 U.S.C. §§ 1519(a)(2) AND 1519(a)(3)**

This matter came on for emergency hearing on November 5, 2026 (the "Hearing") upon the now Verified *Motion for Recognition of Foreign Main Proceeding and for Provisional Relief Under 1519(a)(2) and 1519(a)(3)* (the "Verified Motion"),[1] of Richard Keay Pollock and Mmatlou Hellen Phaleng-Podile (the "Foreign Representatives"), the liquidators of the bankruptcy estate of Rushil Singh (the "Debtor" or "Rushil") in the Debtor's involuntary liquidation proceeding (the "South African Proceeding") under the control and supervision of the High Court of

[1] Emergency Verified Motion for Recognition of a Foreign Main Proceeding and for Provisional Relief Under 1519(a)(2) and 1519(a)(3) (Dkt. Nos. 3, 10).

South Africa, Gauteng Division, Pretoria (the "South African Court"), seeking recognition and related provisional relief under chapter 15 of the Bankruptcy Code. The Court has considered the Chapter 15 petition (the "Petition"),[2] the Verified Motion, the verified complaint in the related adversary proceeding, Adv. Pro. No. 26-01406-PDR (the "Adversary Proceeding") (the "Complaint"),[3] and the arguments of counsel at the Hearing. The Court takes judicial notice of the filings in related Case No. 26-24710-PDR and in the Adversary Proceeding, not for the truth of the matters asserted in them. The Court finds that:

A. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 1501.

B. Venue of this proceeding is proper in this judicial district under 28 U.S.C. § 1410.

C. This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

D. The proceeding concerning the sequestration of the estate of the Debtor is pending before the South African Court.

E. The record reflects that the South African Court placed the Debtor's estate in final sequestration on April 19, 2024.

F. The record reflects that the Foreign Representatives were appointed joint provisional trustees on June 13, 2023, and were authorized by an order

---

[2] Chapter 15 Petition for Recognition of a Foreign Proceeding (Dkt. No. 1).

[3] Complaint for Declaratory Relief of Ownership, or in the Alternative, Avoidance and Recovery of Fraudulent Transfers, and Sequestration and Injunctive Preservation, *Pollock v. Position 1, LLC*, Adv. Pro. No. 26-01406-PDR (Adv. Dkt. No. 1). A verified, identical version of the Complaint is available (Adv. Dkt. No. 7).

dated July 30, 2024, to seek recognition and assistance in the United States.

G. The findings below are made for purposes of provisional relief only under 11 U.S.C. §§ 1519(a)(2) and (a)(3). They rest on the Verified Motion and the Complaint, both of which are verified, and in part on allegations made on information and belief. Findings in this paragraph G describing the conduct, intent, or interests of persons not before the Court are recitals of the movants' allegations for provisional purposes and are not findings binding on those persons.

   a. Rushil and his sister, Nishani Michelle Singh ("Nishani"), were involved in BIG Business Innovations Group (Pty) Ltd. ("BIG"), through which they obtained financing from Investec Bank Limited ("Investec") for business activities in Ghana. The loans were in the amount of approximately R542 million, or approximately $32 million, made between 2016 and 2021, and allegedly fraudulent guarantees were used to secure working-capital and term financing.[4]

   b. In April 2021, Investec advanced R150 million to BIG under a Term Loan Agreement. BIG owned the Ghanaian company Global Innovation Consulting Ltd., later renamed Ghana Infrastructure Company Ltd. ("GIC"). The Complaint alleges, on information and

[4] Verified Motion ¶¶ 2–3.

belief based on a forensic investigation, that Rushil and Nishani diverted facility proceeds through GIC into Nishani's personal accounts and then into Rushil's accounts for personal use, rather than the intended working-capital purpose.[5]

c. The Verified Motion alleges that the siblings diverted financing intended for Ghanaian business activities, including road and hospital construction, to support their lifestyle and purchases of multiple luxury vehicles believed to be located throughout the world. The Complaint alleges, on information and belief, that diverted facility proceeds funded the acquisition of the Porsche identified below.[6]

d. The specific property at issue is a black 1994 Porsche 911 Turbo, vehicle identification number WP0AC2965RS480410, commonly known as the "Bad Boys" Porsche (the "Porsche").[7] It is a unique, identifiable vehicle with asserted film provenance.

e. Rushil purchased the Porsche at a Florida auction in January 2022. A January 18, 2022 payment advice identifies Rushil as the ordering customer and Mecum Auction Inc. as the beneficiary of a U.S.-dollar transfer of $1,421,025, with a reference to Lot No.

---

[5] Complaint ¶ 19.

[6] Verified Motion ¶ 3; Complaint ¶ 21.

[7] Complaint ¶ 1, Ex. B.

S164. The Complaint identifies the remitting account as Rushil's Stanbic Bank Ghana U.S.-dollar account.[8]

f. The Complaint alleges that a forensic investigation traces the purchase funding through Rushil's U.S.-dollar and Ghana-cedi accounts and other accountings.[9]

g. Position 1, LLC ("Position 1") is a Montana limited liability company, entity number C1119984, organized on May 20, 2019, before the Porsche purchase. Its records identify its physical address as 3011 American Way, Missoula, Montana 59808, and its mailing address as P.O. Box 16270, Missoula, Montana 59808. Jared S. Heggen ("Heggen") is identified as its registered agent.[10]

h. Articles of Amendment filed July 1, 2019 changed Position 1's management designation from managers to members and identified Nishani and Rushil as members. The filing bears Heggen's name in its signature section and lists a Heggen Law Office email address.[11]

i. On June 13, 2022, Heggen Law Office issued titling instructions concerning Rushil and Position 1. The instructions stated that the individual's personal name "MUST NOT appear on or be

---

[8] Complaint ¶¶ 2, 20, Ex. A.

[9] Complaint ¶ 21.

[10] Complaint ¶ 9, Ex. I.

[11] Complaint ¶ 22, Ex. I.

referenced to on the Title, MSO, or Certificate of Origin" and directed that the vehicle be titled to Position 1 at 3011 American Way, Missoula, Montana. They also directed delivery of the title and odometer statement to Heggen Law Office's title department.[12]

j. On June 14, 2022, Rushil informed Heggen Law Office that he had bought the vehicle at auction and that his own name appeared on its title. In response, office personnel explained that a Montana bill of sale could be used to move title into the LLC's name, provided the vehicle was not financed in his personal name.[13]

k. On June 21, 2022, a Heggen Law Office employee told Rushil that he would need to sign the title as purchaser because his personal name had been entered, and that a notarized Montana bill of sale transferring ownership from Rushil to the LLC was required. The employee requested the originals at 3011 American Way, Missoula, Montana.[14]

l. A bill of sale dated June 24, 2022 identifies Rushil as seller and Position 1 as purchaser of the Porsche. The form contains the words "Value Recieved" [sic] and "N/A" in the consideration fields

[12] Complaint ¶ 23, Ex. J.

[13] Complaint Ex. J.

[14] Complaint Ex. J.

rather than a stated cash purchase price. The document therefore does not identify a specific cash price paid by Position 1.[15]

m. Position 1's special-meeting minutes dated July 6, 2022 identify Nishani and Rushil as its members, each holding 50%, and approve the purchase and Montana registration of the Porsche. The minutes contain an execution line dated July 18, 2022.[16]

n. The Complaint further alleges that Rushil continued to list the Porsche on his personal balance sheets and insurance confirmations after the registration arrangements described above.[17]

o. By order dated May 25, 2023, Rushil's estate was placed under provisional sequestration in the High Court of South Africa, Gauteng Division, Pretoria, in Case No. 2023-044660.[18]

p. On June 13, 2023, Richard Keay Pollock and Mmatlou Hellen Phaleng-Podile were appointed joint provisional trustees of Rushil's insolvent estate, estate number T000830/2023. Their certificate identifies their powers and authority under the South African Insolvency Act 24 of 1936. They are the plaintiffs in the

---

[15] Complaint ¶ 24, Ex. B.

[16] Complaint ¶ 25, Ex. C.

[17] Complaint ¶ 26.

[18] Complaint Ex. F (order dated May 25, 2023). The Complaint gives the date as May 26, 2023 (Complaint ¶ 7).

Adversary Proceeding and act solely in their representative capacities.[19]

q. By order dated April 19, 2024, the South African Court confirmed the rule nisi and placed Rushil's estate in final sequestration.[20]

r. By order dated July 15, 2024, the joint estate of Nishani and Stephen John Killick was placed under provisional sequestration in Case No. 017911/2023. It identifies their residence as 237 Albert Street, Waterkloof, Pretoria, South Africa, and their marriage as one in community of property.[21]

s. On August 6, 2024, Willem Jacobus Venter, Oriel Rampolokeng Sekati, Koketso Leuwance Selahle, and Matshediso Elizabeth Sello were appointed as provisional trustees of the joint insolvent estate of Nishani and Stephen John Killick, estate number T001461/2024. The certificate identifies the underlying provisional sequestration order as dated July 15, 2024. These four individuals seek recognition in Nishani's Chapter 15 case.[22]

t. Section 20 of the South African Insolvency Act provides the basis for the asserted vesting of each insolvent's estate initially in the Master and thereafter in the appointed trustees. The Complaint

---

[19] Complaint ¶ 6, Ex. E.

[20] Complaint ¶ 7, Ex. G.

[21] Emergency Verified Motion for Recognition of a Foreign Main Proceeding and for Provisional Relief Under 1519(a)(2) and 1519(a)(3), *In re Nishani Michelle Singh*, Case No. 26-24710-PDR (Dkt. No. 3) (the "Nishani Motion"), Ex. B, Ex. F.

[22] Nishani Motion Ex. D, Ex. F.

seeks application of that vesting rule to Rushil's proven property interests, including any retained beneficial interest in the Porsche or his documented 50% distributional interest in Position 1.[23]

u. The July 30, 2024 request order concerning Rushil's estate, in South African Case No. 2024-083013, directs issuance of letters of request to courts in the United States, Ghana, Botswana, and the United Kingdom and authorizes proceedings in those jurisdictions to obtain recognition, preserve assets, and secure and sell assets vesting in the estate.[24]

v. That request order also authorizes declaratory and vindicatory proceedings concerning estate assets, proceedings to set aside pre-sequestration dispositions, interdict proceedings, and other proceedings necessary to administer Rushil's estate. It permits retaining foreign counsel and employing persons to trace and recover assets, compile inventories, and take possession of estate assets.[25]

w. The request order concerning Nishani and Stephen John Killick's joint estate, in South African Case No. 2024-112350, directs letters of request and authorizes recognition and asset-preservation proceedings abroad. Its general provisions also authorize legal

[23] Complaint ¶¶ 38–40.

[24] Complaint Ex. H (order dated July 30, 2024). The Complaint gives the date as August 1, 2024 (Complaint ¶ 8).

[25] Complaint Ex. H.

proceedings, retention of service providers, care of assets, and insurance to safeguard estate assets.[26]

x. The order concerning Nishani's joint estate expressly qualifies that sales are subject to the insolvents' consent while sequestration remains provisional and during the specified appeal circumstances, except as stated in that order.[27] The interim relief requested here concerns preservation and custody rather than an immediate sale or distribution of the Porsche.

y. At Rushil's bail proceedings in August 2024, the prosecution disclosed its knowledge of Position 1 and its vehicles. Both relevant estates were then under sequestration.[28]

z. Per Montana's Secretary of State website,[29] Mesa Prime, LLC ("Mesa"), a Montana limited liability company, entity number C1475217, was organized on September 26, 2024. Its principal physical address is 3011 American Way, Missoula, Montana 59808, and its mailing address is P.O. Box 16270, Missoula, Montana 59808, the same addresses identified for Position 1 and Heggen

---

[26] Nishani Motion Ex. E.

[27] Nishani Motion Ex. E.

[28] Complaint ¶ 27.

[29] The Court can take judicial notice of Montana and Wyoming's Secretary of State website, including corporate filings, pursuant to Fed. R. Evid. 201 and 902(5).

Law Office.[30] The Complaint identifies Sean Frampton as Mesa's registered agent.

aa. Per the Wyoming and Montana Secretaries of State websites, Heggen filed organization documents for Cydonia Holdings, LLC ("Cydonia") and Mesa on September 26, 2024, Cydonia is identified as Mesa's manager, and Mesa shares a mailing address with Cydonia, Position 1, and Heggen Law Office.

bb. The CARFAX report attached to the Complaint contains an entry reporting a vehicle purchase on September 3, 2024 and an entry dated November 20, 2024 reporting issuance or updating of a Montana title, a new owner, and title number AA8061197.[31] The report attributes those entries to the Montana Motor Vehicle Department.

cc. The Complaint alleges that investigative documents and correspondence, including vehicle title reports, identify Mesa as the later title holder and report a December 6, 2024 title-transfer entry from Position 1 to Mesa (the "Mesa Transfer").[32]

dd. The resulting chronology places the August 2024 disclosure concerning Position 1 before the reported September 2024 entity-

[30] Complaint ¶¶ 9–10, 29, Ex. J.

[31] Complaint Ex. D. Under Fed. R. Evid. 201, the Court considers the CARFAX Report not for the truth of the third-party matters asserted in it, but as part of the verified record supporting the Foreign Representatives' preliminary investigation and conclusions.

[32] Complaint ¶¶ 3, 29.

formation activity and the Mesa Transfer. Both sequestrations preceded the formation of Mesa and Cydonia and the Mesa Transfer.[33]

ee. Plaintiffs state that they did not authorize disposition of any property vested in the Debtor's foreign estate. They allege the Mesa Transfer was not an independent arm's-length sale, relying on its timing after disclosure of the assets, the related formation activity, shared addresses, and Heggen's filing involvement.[34]

ff. Heggen's involvement provides a factual connection between the earlier Position 1 structure and the alleged later Mesa structure. Position 1's 2019 amendment identifies him as registered agent and in the signature section; his office directed the 2022 retitling so that Rushil's individual name would not appear; and, per the Wyoming and Montana Secretaries of State websites, Heggen was involved in the September 2024 formation filings for Mesa and Cydonia. Mesa and Position 1 use the same addresses as Heggen's office.[35]

gg. Considered together, Rushil's documented personal purchase and funding, the direction to remove his name from title, the siblings' documented equal interests in Position 1, the intervening

[33] Nishani Motion Ex. B; Complaint Ex. G.

[34] Complaint ¶¶ 31–32.

[35] Complaint ¶¶ 9–10, 23, 29, Ex. I, Ex. J.

sequestrations, the August 2024 disclosure at Rushil's bail hearing, and the company formations by Heggen support a preliminary inference that the Mesa Transfer was connected to the prior ownership and registration arrangements rather than an unrelated transaction. The inference rests on the combined chronology and common involvement.[36]

hh. The same circumstances support, for interim preservation purposes, Plaintiffs' asserted concern that the later transfer was intended to place the Porsche beyond the reach of the sequestered estates.

ii. Plaintiffs learned of the Porsche's scheduled Miami appearance through social-media material. Plaintiffs assert that the Porsche is present in Miami-Dade County for a limited period over the several days following the filing and that this is the first time its whereabouts in the United States have been determined.

jj. Plaintiffs estimate the vehicle's value at approximately $2 million. Together with the documented $1,421,025 acquisition payment and the asserted film provenance, that estimate supports the vehicle's substantial value and distinctive character for purposes of the requested preservation relief.[37]

---

[36] Complaint Exs. A–C, I–J.

[37] Complaint Ex. A.

kk. The Porsche is inherently mobile and can be driven or transported out of Florida. Plaintiffs assert its location had previously been unknown and that, if it leaves its presently known location, Plaintiffs may not be able to locate or safeguard it again.

ll. The limited period of the Porsche's known presence in Miami-Dade County, the prior difficulty locating it, its mobility, and the contested transfer history establish a concrete risk that it will be removed, concealed, or transferred before the claims to it and the requests for recognition can be determined. If that occurs, recovery of the specifically identified vehicle may be frustrated irrespective of its monetary valuation.

H. The South African Proceeding meets the standards of 11 U.S.C. §§ 1519(a)(2) and (a)(3) and the standards governing preliminary injunctive relief applicable under 11 U.S.C. § 1519(e).

I. The Court finds that the Foreign Representatives have:

a. Demonstrated a substantial likelihood on the merits that the Petition will be granted and the South African Proceeding will be recognized as a foreign main proceeding, because:

i. the Foreign Representatives qualify as "foreign representative[s]" as defined in 11 U.S.C. § 101(24);

ii. this Chapter 15 case was properly commenced under 11 U.S.C. §§ 1504, 1515, and 1517;

iii. the Foreign Representatives have likely met the requirements of 11 U.S.C. §§ 1515(b), 1515(c), and 1515(d), and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure;

iv. the South African Proceeding is a foreign proceeding under 11 U.S.C. §§ 101(23) and 1502(4); and

v. the Debtor's center of main interests is in South Africa, where the South African Proceeding is pending.

b. Shown that, absent immediate relief, there is a substantial likelihood of irreparable harm because the Porsche may be removed from its known location, transferred, or concealed before the Court can determine the Petition. The mobility of the Porsche means the Foreign Representatives may not be able to locate or recover it again.

c. Shown that the threatened injury to the estate and its creditors outweighs any harm caused by the temporary and custodial measures imposed by this Order. The measures will preserve the Porsche without authorizing its sale, export, or distribution, while competing interests are adjudicated.

d. Shown that entry of the provisional relief is in the public interest because it prevents harm to parties in interest by safeguarding the

Debtor's assets and permitting administration in the South African Proceeding.

J. The Court finds that the interests of creditors and other interested entities, including the Debtor and persons asserting ownership, lien, or possessory interests in the Porsche, are sufficiently protected by the limited custodial nature of the relief, the storage and insurance requirements, and the preservation of all competing claims and defenses within the meaning of 11 U.S.C. § 1522(a).

K. The relief granted by this Order is authorized by 11 U.S.C. §§ 1519(a)(2) and 1519(a)(3), including the suspension of transfers available under § 1521(a)(3), and is consistent with the limitations of § 1519.

Accordingly, the Court **ORDERS**:

1. The Verified Motion is **GRANTED** to the extent set forth in this Order.
2. The request for final recognition under 11 U.S.C. § 1517 is reserved for separate determination after the required notice and hearing.
3. Under 11 U.S.C. § 1519(a)(2), the administration of the Porsche (vehicle identification number WP0AC2965RS480410), for the limited purpose of safeguarding it and preserving its value, including holding it in protective custody as provided in paragraphs 5 and 6, is entrusted to the Foreign Representatives.

4. Under 11 U.S.C. § 1519(a)(3), incorporating § 1521(a)(3), the Debtor's right to transfer, encumber, or otherwise dispose of the Porsche is suspended to the extent provided in § 1521(a)(3).

5. As to persons other than the Debtor, any restraint on the transfer of the Porsche, and the manner in which custody of the Porsche is obtained, are governed by the order entered in the Adversary Proceeding. Nothing in this Order authorizes the Foreign Representatives to take possession of the Porsche from any person without that person's consent or further order of the Court. In the event of conflict, the order entered in the Adversary Proceeding controls.

6. The Foreign Representatives shall cause the Porsche, once in their custody, to be securely stored, maintained, and insured against loss or damage through the single custodian designated in the order entered in the Adversary Proceeding. The Foreign Representatives shall not move the Porsche except to that custodian and shall not drive, use, or exhibit it. They shall document its condition upon taking custody and preserve the keys and accompanying records. Promptly after taking custody of the Porsche, the Foreign Representatives shall file a status report describing the circumstances of the recovery, the storage location, the condition of the Porsche, and proof of insurance coverage.

7. This Order does not determine title to the Porsche, avoid any transfer, establish liability for fraud, invalidate any lien, or adjudicate any

third-party ownership, possessory, or other claim, including any claim of the estate of Nishani Michelle Singh. All such rights, claims, and defenses are preserved.

8. Unless extended under 11 U.S.C. § 1521(a)(6), the provisional relief granted by this Order terminates when the Court rules on the Petition.

9. Any security required as a condition of restraining the transfer of the Porsche or of taking it from any person is governed by the order entered in the Adversary Proceeding. This Order takes possession of nothing from any person and restrains no person other than the Debtor.

10. All persons and entities provided notice of this Order who are in possession, custody, or control of the Porsche shall immediately advise the Foreign Representatives by written notice sent to the following addresses:

Richard Keay Pollock (First Applicant)
Harvard Corporate Rescue Services
No. 7 – 17th Avenue, Houghton Estate
Johannesburg, Gauteng 2198
South Africa

Mmatlou Hellen Phaleng-Podile
Phaleng-Podile Attorneys
208–212 Jeppe Street, 2nd Floor Marble Towers
Johannesburg
South Africa

###

Copies to:
All parties in interest.